**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-00068-SPM |
| | ) | |
| FRANK BISIGNANO,<br>Commissioner of Social Security,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Jessica P. ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because the Court finds the decision denying benefits was not supported by substantial evidence, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

.

## I. Factual Background

At the hearing before the ALJ on July 26, 2023, Plaintiff testified as follows. She testified that she was placed at a residential care facility because she is unable to take care of herself, namely with respect to her ability to work, pay bills, get around to doctor's appointments, and other regular tasks. (Tr. 46-47). As relevant here, she described having issues with concentration and fatigue. (Tr. 53). She is unable to perform tasks for more than 15 minutes at a time due to anxiety and she needs to have a change of scenery, focus, or position before returning to the original task. (Tr. 53-54). Plaintiff's anxiety also makes her feel like she cannot breathe and like her chest is caving in. (Tr. 54). Her depression causes symptoms such as crying and fatigue. (Tr. 54). She cries almost daily and has difficulty catching her breath. (Tr. 54-55). She has manic episodes where she speaks very quickly or slowly and is restless. (Tr. 54). She experiences anxiety pertaining to regular tasks such as bills, taking care of herself, doctor's appointments, and her children generally. (Tr. 54). She also has social anxiety and testified that she does not like or trust other people, and feels nervous around them. (Tr. 55).

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II. Procedural Background

On December 3, 2021, Plaintiff applied for SSI, alleging that she had been unable to work since January 3, 2021 due to, *inter alia*, anxiety, posttraumatic stress disorder (PTSD), depression, scoliosis spina bifida, spondylosis, and degenerative disc disease. (Tr. 230-39, 264). Her application was initially denied. (Tr. 123-127). On October 31, 2022, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 14). After a hearing, the ALJ issued an

unfavorable decision on January 18, 2024. (Tr. 14-36). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, but the Appeals Council declined to review the case . (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. Standard for Determining Disability Under the Act

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the

Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the

claimant is found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## IV. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since November 8, 2021; that Plaintiff had the severe impairments of osteoarthritis; multilevel degenerative disc disease status-post surgical intervention; scoliosis; anxiety disorder; depression disorder; and post-traumatic stress disorder (PTSD); and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 19-20). The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except, as relevant here:

> The individual can understand, remember, and execute simple, routine instructions consistent with unskilled work, and can maintain concentration, persistence, and pace in so doing. The individual may occasionally interact with supervisors but cannot tolerate close "over-the-shoulder" supervision. The individual may occasionally interact with colleagues if meetings are brief and task oriented but may not interact with the public. The individual may perform low stress work, defined as only occasional workplace changes, making occasional simple decisions, and performing tasks in which the individual has some control over work pace subject to ordinary overall production requirements.

(Tr. 23). Relying on the testimony of a vocational expert, the ALJ further found that Plaintiff is unable to perform her past relevant work, but that there are jobs that exist in significant numbers

in the national economy that Plaintiff can perform. (Tr. 28-29). Such occupations include price marker, mailroom clerk, and small products assembler. (Tr. 29-30). Thus, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since November 9, 2021, the date of the application. (Tr. 30).

## V. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004) & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## VI. Discussion

Plaintiff argues that the ALJ's decision should be reversed because the ALJ failed to properly evaluate the functional limitations caused by Plaintiff's mental impairments. Specifically, Plaintiff argues that the ALJ relied on a selective reading of the record. She asserts that the ALJ improperly focused on the portions of medical records that documented improvement in Plaintiff's symptoms, and that the ALJ gave inadequate consideration to the unpredictability of Plaintiff's symptoms as reflected in the record as a whole. The Commissioner argues that substantial evidence supports the ALJ's decision and that Plaintiff is improperly asking the Court to reweigh the evidence.

A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015))."[T]he RFC determination is a

'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). However, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper*, 964 F.3d at 744 (citing *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)). "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), and *Landess v. Weinberger*, 490 F.2d 1187, 1188 (8th Cir. 1974)). "An ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

Here, the ALJ found that "[o]verall, the record does show the claimant was hospitalized for psychiatric symptoms during the relevant period. However, these treatment notes also show the claimant quickly returned to baseline with treatment." (Tr. 27). The ALJ continued by noting that "the claimant did report chronic anxiety during physical examinations, but the psychiatric portions of the examinations revealed no abnormalities." (Tr. 27). The ALJ acknowledged psychiatric hospitalizations in December 2021, February 2022, March 2022, May and June 2023, and July 2023, but he highlighted Plaintiff's improved condition following these visits, respectively: "[h]er mood and affect improved, and she was discharged four days later in an improved condition" (Tr. 26); "[o]n discharge, she reported improved mood and feeling 'much better'" (*id.*); she "again quickly improved with psychotropic medication and group therapy" and her mental status examination was within normal limits on discharge (*id.*); she "quickly returned to baseline with treatment" (Tr. 27); and she "reported improvement following a medical

assessment" (*id.*). The ALJ therefore concluded that the RFC adequately accounted for Plaintiff's mental limitations "[b]ecause the claimant quickly returned to baseline with treatment, the psychiatric evaluations at physical examinations were largely within normal limits, and the consultative evaluation revealed only minimal abnormalities." (Tr. 27-28).

"[R]ecognition must be given to the instability of mental impairments and their waxing and waning nature after manifestation." *Lillard v. Berryhill*, 376 F. Supp. 3d 963, 984 (E.D. Mo. Mar. 25, 2019) (citation omitted)**;** *Lynette J. v. Dudek*, 2025 WL 521803, at *4 (E.D. Mo. Feb. 18, 2025). "Given the unpredictable course of mental illness, symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impeding possibility of relapse." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citation modified); *see also Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) ("Although the mere existence of symptom-free periods may negate a finding a disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim."). "This is certainly true where the reports of improvement are made upon release from in-patient psychiatric care." *Wigfall v. Berryhill*, 244 F. Supp. 3d 952, 965 (E.D. Mo. 2017).

Based on this Court's review of the medical record, it appears that the ALJ in this case failed to recognize and account for "the instability of mental impairments and their waxing and waning nature after manifestation," *Lillard,* 376 F. Supp. 3d at 984. As a result, the ALJ may have given undue weight to "symptom-free intervals" and periods of "brief remissions," *Hutsell*, 259 F.3d at 711, while ignoring other evidence that could bear on Plaintiff's ability to work such as evidence that the improvements noted by the ALJ typically occurred after Plaintiff was released from in-patient psychiatric care. *Wigfall*, 244 F. Supp. 3d at 965.

For example, the ALJ notes that "[w]hile the early record does show psychiatric hospitalizations, the later record shows the claimant's mental impairments required only intermittent hospitalization and treatment was conservative." (Tr. 27). However, the medical record reflects that Plaintiff's psychiatric hospitalizations at Poplar Bluff Regional Medical Center ("PBRMC") include: a stay from December 12, 2021 to December 16, 2021 (Tr. 932-34); a stay from February 24, 2022 to March 1, 2022 (Tr. 987-1011); a stay from March 24, 2022 to March 27, 2022 (Tr. 1107-10); a visit of at least two days starting February 10, 2023 (Tr. 1238, 1136); an admission on May 18, 2023 (Tr. 1309); a stay from May 31, 2023 to June 6, 2023 (1412, 1499-1505); a visit on June 7, 2023 (Tr. 1336-38); a visit from June 14, 2023 to June 21, 2023, followed by a return to the emergency department on June 21, 2023 (Tr. 1479-1490); and another visit to the emergency department on July 18, 2023 (Tr. 1578). During these visits, Plaintiff was given B52 to calm her down (Tr. 1238), sedated with Zyprexa, Haldol, Benadryl, and Ativan (*see, e.g.,* Tr. 1309), and physically restrained (Tr. 1505), in addition to being prescribed numerous other medications such as Xanax, Valium, Norco, and Olanzapine (*see, e.g.,* Tr. 960, 1260, 1479). Given the medical record as discussed above, the ALJ's characterization of Plaintiff's hospitalizations as "intermittent" and her treatment as "conservative" is not supported by substantial evidence.

The ALJ's characterization of Plaintiff's hospitalizations in May and June 2023, is also not supported by substantial evidence once the medical record is considered. Specifically, the ALJ described Plaintiff's hospitalizations in May and June 2023 as follows:

> The claimant was again hospitalized in May and June 2023 for psychiatric symptoms, but quickly returned to baseline with treatment. Follow-up treatment later in June 2023 shows the claimant's mood was anxious, but behavior was cooperative. A psychiatric follow-up also in June 2023 revealed fair eye contact, she was alert and oriented times three, insight was poor, judgment was fair, thought content and processes were appropriate, appearance was appropriate, mood was consistent, and no psychomotor agitation was observed. Her medications were adjusted.

(Tr. 27) (internal citations omitted). However, the medical records from these visits paint a markedly different picture.

The hospital records indicate that Plaintiff was admitted on May 31, 2023, for paranoia and "delusions with hallucinations" and was not discharged until June 6, 2023. (Tr. 1412). Over the course of this hospitalization, staff recorded that Plaintiff, *inter alia*: repeatedly yelled "stop raping me," "the techs are raping me with their tablets," and similar comments, even when no one was present in her room; defecated on the hallway floor; screamed in the hallway and threatened staff; hit herself in the face (with bruises later appearing) and attempted to break her room door; was placed in restraints; appeared "manic, delusional" and again, a few days later, "delusional and displaying anger" and "guarded"; was "withdrawn and isolative"; was "shaking from inside out" while complaining of anxiety; and said "I just need the satellite out of [my] ear…because there people (*sic*) that are named in there." (Tr. 1499-1504). The day after her discharge, Plaintiff returned to the emergency department because she was hearing voices and felt like she was going to die. (Tr. 1336). She returned to the hospital a week later, on June 14, 2023, reporting that she was hearing voices telling her to hurt herself. (Tr. 1490). She was discharged from the behavioral health unit on June 21, 2023. (Tr. 1490). Upon returning home, she immediately called emergency medical services to return to the emergency room that same day. (Tr. 1497). She was "crying uncontrollably" during the assessment, reported suicidal ideation and auditory hallucinations, and expressed feeling that she was going to die if she was left home alone. (*Id.*).

In light of the findings reflected in the medical record, the ALJ's conclusion that "[e]xcept for one hospitalization [from December 2022 to January 2023], the claimant was consistently found to be cooperative with examiners" and the ALJ's repeated emphasis that Plaintiff "quickly returned to baseline with treatment" in his evaluation of Plaintiff's hospitalizations is not supported

by substantial evidence. As further illustration, the psychiatric evaluation from a February 2023 visit conveys that Plaintiff "could not remember who she was yesterday" and felt confused, and that Plaintiff was "very psychotic" during the nursing assessment. (Tr. 1238). Staff reported that Plaintiff displayed psychotic behavior, was "screaming [her] soul out," and her screams echoed in the hallway and disturbed a number of patients. (*Id.*). Plaintiff also expressed her belief that the staff were killing her. (*Id.*). The ALJ summarized this stay in a sentence: "The claimant was briefly hospitalized again in February 2023 with reported suicidal ideation, and she appeared psychotic." (Tr. 27).

While the records occasionally indicate unremarkable findings, they also display periods of regression and decline amidst ongoing efforts to manage Plaintiff's symptoms through changes to Plaintiff's prescribed medications. The ALJ's description of Plaintiff's mental health treatment and the conclusions drawn as a result appear to ignore evidence of this waxing and waning of Plaintiff's symptoms. The ALJ's discussion about Plaintiff's mental health impairments also appears to ignore the repeated diagnoses Plaintiff received for psychosis (*see, e.g.,* 1238, 1309, 1577), repeated auditory and visual hallucinations (*see, e.g.,* 1394, 1412, 1469, 1479, 1490), and repeated outbursts to hospital employees (*see, e.g.,* 1238, 1394, 1505). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Bossio-Haines v. Kijakazi*, 2023 WL 6846968, at *5 (E.D. Mo. Oct. 17, 2023) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)) (internal quotation marks omitted). "It is inherent in psychotic illnesses that periods of remission will occur...indeed, one characteristic of mental illness is the presence of occasional symptom-free periods." *Doshie v. Saul*, 2019 WL 4059899, at *14 (E.D. Mo. Aug. 28, 2019) (citation modified). "Furthermore, doing well for the purpose of a treatment program has no

necessary relation to a claimant's ability to work or to her work-related functional capacity." *Id.* (quoting *Hutsell*, 259 F.3d at 712) (citation modified).

The Court concludes that the ALJ's RFC determination is not supported by substantial evidence because the ALJ appears to have "impermissibly ignored a line of evidence which could have supported a finding of disability." *Bossio-Haines*, 2023 WL 6846968, at *5.; *see also Hutsell*, 259 F.3d at 712 (finding that the ALJ "relied too heavily on indications in the medical record that [plaintiff] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relationship to a claimant's ability to work or to her work-related functional capacity"). "The record is replete with treatment notes documenting Plaintiff's ongoing mental health struggles, yet the ALJ's decision essentially limited the RFC analysis to those reflective of improvement." *Lynette J.*, 2025 WL 521803, at *4. There is "substantial medical evidence of record demonstrating [Plaintiff's] persistent and severe mental symptoms" and the ALJ "erred by failing to take into account the cyclical nature of mental impairments." *Wigfall*, 244 F. Supp. 3d at 965.

It is not clear from the ALJ's decision that he considered the totality of the evidence and gave due consideration to the instability of mental illness and its waxing and waning nature. The ALJ's omissions require remand. *Lynette J.*, 2025 WL 521803, at *4. Because remand is required, the Court declines to address all of Plaintiff's remaining arguments. *Berry v. Kijakazi*, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021).

## VII. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of August, 2026.